1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES WATERKEEPER, a California non-profit association,

      Plaintiff,

    v.

SUPERIOR DUCT FABRICATION, INC., a California corporation,

      Defendant.

Case No. 2:24−cv−08975 ODW(AJRx)

**CONSENT DECREE**

CONSENT DECREE

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendant Superior Duct Fabrication, Inc. ("Defendant") owns and operates a facility at 1683 Mount Vernon Avenue, City of Pomona, California, under Waste Discharger Identification number 4 19I023609 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of manufacturing sheet metal products and ducts used in heating, ventilation, and air conditioning systems and related activities. The Facility is categorized under Standard Industrial Classification ("SIC") Code 3444, covering Sheet Metal Work.

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

82258-00002/5429647.6

"CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's industrial operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated, as appropriate, in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on August 16, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on October 17, 2024, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:24−cv−08975 DDP (AJRx) ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains

82258-00002/5429647.6

and surface waters, including South San Jose Creek, San Jose Creek, the San Gabriel River (Reach 3) and the San Gabriel River Estuary (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District of California Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. LA Waterkeeper has standing to bring this action.

5. The Court shall retain jurisdiction over this action for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall

82258-00002/5429647.6

have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

## I.    OBJECTIVES

6.    It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.    In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

8.    <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

82258-00002/5429647.6

9. <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10. <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

11. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

    a.    "BAT" means the Best Available Technology Economically Achievable.

    b.    "BCT" means the Best Conventional Pollutant Control Technology.

    c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

    d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

    e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

    f.    "Design Storm" means the volume and flow rate of runoff produced from a design storm as defined by General Permit Section X.H.6.

g.  "Discharge Point" means each industrial discharge location designated for sampling pursuant to the General Permit in the then-current SWPPP for the Facility.

h.  "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

i.  "Entry Date" means the day this Consent Decree is approved and entered by the Court.

j.  "Forecasted Rain Event" means a forecasted rain event with a thirty percent (30%) or greater probability of precipitation above 0.1 inches for the following 24-hour period at least twenty-four (24) hours prior to the rain event as determined by the National Oceanic and Atmospheric Administration ("NOAA") (http://forecast.weather.gov/)[2] for Pomona, CA, USA".

k.  "MIP" means a Monitoring Implementation Plan.

l.  "PPT" means Pollution Prevention Team.

m.  "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

n.  "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

o.  "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p.  "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=34.0601&lon=117.7737&unit=0&lg=english&FcstType=graphical.

6

CONSENT DECREE

q.     "SWPPP" means a Storm Water Pollution Prevention Plan.

r.     "Term" means the period between the Effective Date and the "Termination Date."

s.     "Termination Date" means the latest of:

    i.     June 30 following three (3) years from the Effective Date;

    ii.    seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30 following three (3) years after the Effective Date; or

    iii.   seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

    iv.    Notwithstanding the foregoing, if the sampling results for samples taken at the Facility as required by this Consent Decree during four (4) consecutive QSEs demonstrate no "Exceedances" (as defined below) of any parameter at any Discharge Point, and provided that all accrued monetary obligations in this Consent Decree have been met and that there are no ongoing, unresolved proceedings or processes to enforce the Consent Decree, then the Termination Date of this Consent Decree shall be thirty (30) days from the date Defendant provides written notification to LA Waterkeeper of its right to terminate pursuant to this Paragraph.

    v.     Alternatively, the Consent Decree will terminate ten (10) business days after Defendant notifies LA Waterkeeper that it has received written approval/acceptance notification

CONSENT DECREE

from the LA Regional Board via SMARTS or otherwise for "No Exposure Certification" ("NEC") coverage at the Facility following an inspection by LA Waterkeeper or the Regional Water Quality Control Board that confirms compliance with all NEC requirements of the General Permit. Consistent with Paragraphs 16-17 below, Defendant shall notify LA Waterkeeper of any application for NEC coverage at least 30 days prior to submitting the application to the Regional Board.

t.    "Wet Season" means the period beginning October 1st of any given calendar year and ending May 31st of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.    <u>Current and Additional Best Management Practices.</u> At all times during the Term, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those necessary to comply with: (1) BAT/BCT-level pollutant reductions; and (2) the General Permit's Receiving Water Limitations, which require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

82258-00002/5429647.6

14.    <u>Rain Gauge/Sensor</u>. Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within thirty (30) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, except in the event of equipment malfunctions caused by something outside of Superior Duct's control. In the event of such an equipment malfunction, data from NOAA identified above shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

15.    <u>Structural and Non-Structural BMPs for the Facility</u>. As soon as possible but no later than ninety (90) days of the Effective Date, unless otherwise noted, Defendant shall develop and implement the following BMPs at the Facility:

    a.    Implement a sweeping program on all paved areas using a regenerative air or vacuum sweeper at least once per month outside of the Wet Season, once per week during the Wet Season, and within twenty-four (24) hours prior to a Forecasted Rain Event, and employ hand sweeping and/or machine sweeping on the same schedule in areas a mechanical sweeper cannot access;

    b.    During the Wet Season, employ and secure wattles/filters/filtration socks (biochar or other equivalent media) at DP1a, DP1b, DP2, and DP6 as noted in <u>Exhibit A</u> to remove sediments, metals, and organic materials in storm water discharged from the Facility, and configure such wattles/filters/socks to achieve maximum contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping

9
CONSENT DECREE

formations. Defendant shall, thereafter, employ and secure new wattles/filters/socks in the same manner annually prior to the start of the Wet Season, no later than September 15th;

c.    During each Wet Season during the Term, as necessary, replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visually observable damage that render them ineffective, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations;

d.    Institute a formal pre-rain protocol throughout the Wet Season to be implemented within seventy-two (72) hours prior to a Forecasted Rain Event, involving inspection of all filters and wattles deployed at the site, removal of any exposed waste material, and cover of uncovered debris bins and trash cans at the Facility;

e.    Within twenty-four (24) hours prior to a Forecasted Rain Event, remove any exposed waste material and cover all industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to minimize exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

f.    Remove, and prevent the storage of unused, inutile, and/or abandoned racks, vehicles, equipment, paint and waste scrap materials from outdoor uncovered areas to the maximum extent feasible and practicable;

82258-00002/5429647.6

Docusign Envelope ID: F824EF8F-8373-4E29-952A-B8C3AD5C9D8B

g.    Institute an equipment, fueling, and vehicle maintenance program that ensures that during wet weather:

    i.    except when conducted under cover, no maintenance activities occur outdoors, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

    ii.    maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

    iii.    when maintenance activities or fueling activities must be performed outdoors (i.e., not under cover), action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

h.    Within ten business (10) days of all of the above BMPs being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that all such BMPs have been implemented as set forth above.

## B.   NO EXPOSURE CERTIFICATION

16.    If Defendant intends to apply for an NEC for the Facility, at least thirty (30) days prior, it shall first confirm to LA Waterkeeper in writing that it has complied with all requirements set forth in the General Permit, and shall provide LA Waterkeeper with the NEC Checklist pursuant to General Permit § XVII.F.2 demonstrating that none of the following materials or activities are, or will be in the foreseeable future, exposed to precipitation:

a.    Using, storing or cleaning industrial machinery or equipment, and areas where residuals from using, storing or cleaning industrial machinery or equipment remain and are exposed;

82258-00002/5429647.6

b.  Materials or residuals on the ground or in storm water inlets from spills/leaks;

c.  Materials from past industrial activity;

d.  Material handling equipment (except adequately maintained vehicles);

e.  Materials or products during loading/unloading or transporting activities;

f.  Materials or products stored outdoors (except final products intended for outside use, e.g., new cars, where exposure to storm water does not result in the discharge or pollutants);

g.  Materials contained in open, deteriorated or leaking storage drums, barrels, tanks, and similar containers;

h.  Materials or products handled/stored on roads or railways owned or maintained by the Discharger;

i.  Waste material (except waste in covered, non-leaking containers, e.g., dumpsters);

j.  Application or disposal or processed wastewater (unless already covered by a NPDES permit); and

k.  Particulate matter or visible deposits of residuals from roof stacks/vents evident in the storm water outflow.

17.     Additionally, pursuant to General Permit § II.B.2.b, to qualify for the NEC, Defendant shall conduct an Annual Facility Comprehensive Compliance Evaluation ("Annual Evaluation") as described in General Permit § XV, pay an annual fee, and certify the Facility meets NEC requirements.

### C.     SAMPLING AT THE FACILITY

18.     Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water

Docusign Envelope ID: E824EF8E-6372-4E99-952A-B8C2AD5C9D8B

discharge from each Discharge Point from at least four (4) Qualifying Storm Events, including two (2) QSEs during the first half of the Reporting Year and two (2) QSEs during the second half of the Reporting Year. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. If Defendant would have been required to collect samples during a rain event pursuant to this Consent Decree had such rain event produced a discharge, but Defendant did not collect samples because such rain event did not produce a discharge or there was insufficient flow to collect a sample, then Defendant shall document the inability to sample by taking photographs during the rain event of each Discharge Point from which no discharge occurred. Defendant shall submit such photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within five (5) business days of a written request for such records by LA Waterkeeper.

19. <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed, at a minimum, for the parameters listed in Table 1. Should Defendant conduct sampling and detect any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). The Parties shall meet and confer at LA Waterkeeper's request, regarding the applicable Table 1 limit for such purposes.

20. <u>Laboratory and Holding Time</u>. Except for pH samples, Defendant or Defendant's consultant or agent shall cause delivery of all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

CONSENT DECREE

82258-00002/5429647.6

21.    <u>Detection Limit</u>. Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

22.    <u>Reporting</u>. Defendant shall provide complete laboratory results of all samples collected at the Facility's designated discharge monitoring locations to SMARTS in accordance with the General Permit, and Defendant shall provide copies to LA Waterkeeper within ten (10) days of receiving the laboratory report with the results.

23.    In addition to the sampling required by Paragraph 18, during the 2025-2026 and 2026-2027 Reporting Years, Defendant shall conduct representative storm water sampling and visual monitoring of storm water run-on to the Facility from the east side of the Facility. During each of those reporting years, Defendant shall collect samples of storm water at three locations:

       a.  Storm water flowing onto the Facility at the northern entrance road (northeast corner of Building 1) (Location RS #1 depicted on <u>Exhibit A</u>);

       b.  Storm water in channel prior to entering existing trench drain along southside of Building 1 (Location RS #2 depicted on <u>Exhibit A</u>);

       c.  Storm water flowing down Common Road prior to any contributions of storm water from the Facility (Location RS #3 depicted on <u>Exhibit A</u>).

Defendant shall sample each of these locations from at least two (2) Qualifying Storm Events, including one (1) QSE during the first half of each Reporting Year and one (1) QSE during the second half of each Reporting Year. For each storm water run-on sample, Defendant shall comply with Paragraphs 19 through 21. Defendant shall

82258-00002/5429647.6

provide a copy to LA Waterkeeper within ten (10) days of receiving the laboratory report with the results of each sample of run-on storm water.

**D.    REDUCTION OF POLLUTANTS IN DISCHARGES**

24.    <u>Table 1 Numeric Limits</u>. Defendant shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1[3]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L (instantaneous); 100 mg/L (annual average) | NAL |
| Oil & Grease (O&G) | 25 mg/L (instantaneous); 15 mg/L (annual average) | NAL |
| pH | 6.0-9.0 SU (instantaneous) | Basin Plan |
| Zinc (Zn) | 0.26 mg/L (annual average) | NAL |
| Nitrate plus nitrite as nitrogen (N+N) | 0.68 mg/L (annual average) | NAL |
| Iron (Fe) | 1.0 mg/L (annual average) | NAL |
| Aluminum (Al) | 0.75 mg/L (annual average) | NAL |

25.    <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any two (2) storm water samples from any drainage area exceeds the applicable numeric limit contained in Table 1 during any Reporting Year during the Term.[4]

---

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for TSS is either increased to 110 mg/L or decreased to 90 mg/L, such new NAL, and not 100 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for TSS being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

[4] As examples: (i) samples from both Sample Location #1 and Sample Location #2 exceeding the 0.026 mg/L standard for zinc on December 28, 2025; (ii) samples from Sample Location #1 exceeding the 0.026 mg/L standard for zinc on

82258-00002/5429647.6

26.    <u>Action Plan</u>. As of the Effective Date, and for the remainder of the Term, if (a) Defendant has an unauthorized non-storm water discharge in violation of Paragraph 12, or (b) Defendant receives a laboratory report for storm water samples that demonstrates an Exceedance as defined above (each, a "Trigger Event"), Defendant shall prepare and submit to LA Waterkeeper a plan to address the conditions causing the Trigger event ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within forty-five (45) days of the applicable Trigger Event.  An Action Plan shall not be required when the BMPs for the applicable Exceedance for the same pollutant in the same drainage area were addressed in a previous Action Plan in the same Reporting Year and such BMPs were not yet implemented as of the date of the applicable QSE sampling that led to the Exceedance.[5]  To the extent Defendant believes that any Exceedance is the result of pollutants originating from non-industrial sources such as aerial deposition or from an adjacent facility, the Action Plan shall include data and technical analysis to reasonably establish such facts.

a.    <u>Action Plan Requirements</u>. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s) and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the source of each pollutant exceedance and/or applicable unauthorized non-storm water discharge; (3) the identification of additional BMPs that shall be implemented to

---

December 28, 2025 and on March 15, 2026; or (iii) a sample from Sample Location #1 exceeding the 0.026 mg/L standard for zinc on December 28, 2025, and a sample from Sample Location #2 exceeding the 0.026 mg/L standard for zinc on March 15, 2026.

[5] For clarity, an Action Plan based on an Exceedance shall be required if: (i) the applicable Exceedance is demonstrated for a pollutant and/or in a drainage area not addressed in a previous Action Plan in the same Reporting Year; and/or (2) when the applicable Exceedance is demonstrated for the same pollutant in the same drainage area as in a previous Action Plan in the same Reporting Year and the BMPs in the previous Action Plan were fully implemented before the applicable QSE that led to the Exceedance was sampled.

achieve compliance with the numeric limit(s) and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within ten (10) days of all of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

    b.   <u>Action Plan Proposed BMPs.</u> The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

        i.   <u>Hydrologic Controls</u>. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing onto the Facility from the adjacent business to the east or from flowing off site other than through the engineered storm water conveyance system.

        ii.   <u>Sweeping</u>. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

        iii.   <u>Treatment Systems</u>. Installing additional components or systems, implementing Advanced BMPs as described in Section X.H.2 of the Permit, or making changes to operation and maintenance protocols to provide more

effective filtration treatment of storm water prior to discharge.

iv. <u>Evaluation of Existing BMPs</u>.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c. <u>Action Plan Review</u>. LA Waterkeeper shall have ten (10) business days upon receipt of Defendant's complete draft Action Plan to provide Defendant with comments. Within ten (10) business days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any proposed revision or recommendation is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d. Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 31.b. below.

e. <u>Action Plan Payments</u>. Defendant shall pay Three Thousand Dollars ($3,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments are due at the same time that the

82258-00002/5429647.6

applicable Action Plan is submitted and shall be made to "Los

Angeles Waterkeeper" via certified mail, return receipt requested

to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E. 2nd

Street, Suite 250, Los Angeles, CA 90012. Failure to submit a

payment as required under this Paragraph will constitute a breach

of the Consent Decree.

E.    **VISUAL OBSERVATIONS**

27.    <u>Storm Water Discharge Observations</u>. During the Term, appropriately

trained staff of Defendant shall conduct visual observations during the Facility's

operating hours during every rain event until the required number of QSEs is sampled

for each half of the reporting year. Such inspections shall comply with all

requirements of Section XI.A.2 of the General Permit. Defendant also shall conduct

visual observations during the Facility's operating hours of each of the storm water

run-on sampling locations and during each of the sampling events required by

Paragraph 23.

28.    <u>Monthly Visual Observations</u>. During the Term, appropriately trained

staff of Defendant shall conduct monthly non-storm water visual observations of the

Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the

General Permit. Such observations shall include outfalls, Discharge Points, outdoor

industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and

all other potential sources of industrial pollutants. All Discharge Points shall also be

inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens

upon any standing water, and other materials associated with operations at the

Facility. During the Wet Season, such inspections shall further include observations

of all storm water BMPs that are used only during the Wet Season at the Facility to

ensure that operational BMPs are being implemented, structural BMPs are in good

condition or working order, and that BMPs have been effective in producing clean

82258-00002/5429647.6

conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

29.    <u>Visual Observations Records</u>. During the Term, Defendant shall maintain observation records, including representative photographs where applicable, to document compliance with Paragraphs 27 and 28. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) representative photographs of all the foregoing.  Defendant shall provide LA Waterkeeper with a copy of those records within ten (10) business days of receipt of a written request from LA Waterkeeper for those records.

**F.    TRAINING AND PLANS**

30.    <u>Employee Training Program</u>. Within forty-five (45) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform or supervise the activities required by the General Permit and this Consent Decree ("Training Program"):

   a.    <u>Materials</u>. Training materials should include, at minimum, detailed protocols, including maps and drawings where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

82258-00002/5429647.6

b.   Language. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c.   Training Frequency. Annual training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d.   Sampling Training. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e.   Visual Observation Training. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.   Non-Storm Water Discharge Training. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.   <u>Employees</u>. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within ninety (90) days of their hiring date; and

h.   <u>Records</u>. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within ten (10) business days of receipt of a written request.

31.   <u>SWPPP Revisions</u>.

a.   <u>Initial SWPPP Revisions</u>. To the extent not already incorporated, Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within forty-five (45) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.   A revised pollutant source assessment, including all elements required by Section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.   A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by Section X.G of the General Permit;

82258-00002/5429647.6

iii.  Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

iv.  A set of site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting the different drainage areas and flows;

v.  A MIP as required by Sections XI and X.I of the General Permit;

vi.  A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

vii.  A Training Program as described above in Paragraph 30.

b.  Additional SWPPP Revisions.

i.  Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

ii.  Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or

23

CONSENT DECREE

PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c.    Review of SWPPP.  For any SWPPP updates pursuant to Paragraphs 31.a and 31.b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

**G.    COMPLIANCE MONITORING AND REPORTING**

32.    LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree or a dispute regarding an application for NEC Coverage by Defendant, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to

meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff

shall not unreasonably request, and Defendant shall not unreasonably deny, one

additional Site Inspection. Any Site Inspection shall occur during normal business

hours, and LA Waterkeeper will provide Defendant with at least forty-eight (48)

hours' notice prior to a Site Inspection for dry weather inspections. For any Site

Inspection requested to occur in wet weather, Plaintiff will provide at least twenty-

four (24) hours' notice and shall be entitled to adjust timing or reschedule during

normal business hours in the event the forecast changes and anticipated precipitation

appears unlikely, and thus frustrates the purpose of visiting the Facility in wet

weather. Notice will be provided by electronic mail to the individual(s) designated

below at Paragraph 59. During a wet weather inspection, Plaintiff may request that

Defendant collect a sample of industrial storm water discharge from the Facility's

designated industrial discharge point(s) referenced in its SWPPP, to the extent that

such discharges are occurring. Defendant shall collect the sample and provide a split

sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split

sample(s) being collected by Defendant's representative. LA Waterkeeper shall be

permitted to take photographs or video recording of industrial, outdoor areas during

any Site Inspection.

33.     Document Provision. During the Term, Defendant shall notify and

submit documents to LA Waterkeeper as follows:

a.     Defendant shall copy LA Waterkeeper on or promptly forward a

copy to LA Waterkeeper, by electronic mail to the individual(s)

designated below at Paragraph 59, all compliance documents,

monitoring and/or sampling data, written communications and/or

correspondences, or any documents related to storm water quality

at the Facility that are submitted to the Regional Board, the State

Board, and/or any state or local agency, county or municipality.

25
CONSENT DECREE

b.    Within five (5) business days of receipt by Defendant, Defendant shall send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 59, any compliance document, inspection report, written communication and/or correspondence (except automated or non-substantive replies and confirmations), or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

34.    <u>Compliance Monitoring</u>. Defendant shall partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Four Thousand Five Hundred Dollars ($4,500.00) per Reporting Year during the Term.  In the event that, pursuant to Paragraph 32, there is an additional Site Inspection in a given year to resolve a dispute, Defendant shall reimburse LA Waterkeeper an additional Four Thousand Five Hundred Dollars ($4,500.00) during such year, within thirty (30) days after any additional Site Inspection. The initial payment shall be made within thirty (30) days of the Entry Date, and subsequent annual payments shall be made on the anniversary of the Entry Date. Payments pursuant to this Paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**H.    ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

35.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution

82258-00002/5429647.6

1   from industrial activities occurring in South San Jose Creek, San Jose Creek, the San

2   Gabriel River (Reach 3) or the San Gabriel River Estuary, Defendant shall make a

3   payment totaling Thirty Five Thousand Dollars ($35,000.00) to the Rose Foundation

4   made within thirty (30) days of the Entry Date, payable to the Rose Foundation for

5   Communities and the Environment and sent via overnight mail to Rose Foundation,

6   201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required

7   under this Paragraph will constitute breach of the Consent Decree.

8       36.    <u>LA Waterkeeper's Fees and Costs</u>. Defendant shall pay a total of Fifty

9   Eight Thousand Dollars ($58,000.00) to LA Waterkeeper to partially reimburse

10  Plaintiff for their investigation fees and costs, expert/consultant fees and costs,

11  reasonable attorneys' fees, and other costs incurred as a result of investigating and

12  filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of

13  the Entry Date. The payment shall be made payable to Lozeau Drury LLP and

14  delivered by overnight carrier to Michael R. Lozeau, Lozeau Drury LLP, 1939

15  Harrison St., Suite 150, Oakland, California, 94612. Failure to submit payment as

16  required under this Paragraph will constitute breach of the Consent Decree.

17      37.    <u>Missed Deadlines</u>. In the event that Defendant fails to submit to LA

18  Waterkeeper any payment, document, report, or communication required by this

19  Consent Decree, LA Waterkeeper shall provide written notice to Defendant of such

20  missed deadline.  Defendant shall have five (5) business days from receipt of such

21  notice to cure such delinquency.  If Defendant fails to cure such delinquency within

22  five (5) business days of receipt of LA Waterkeeper's notice, then Defendant shall

23  pay a stipulated payment of Five Hundred Dollars ($500) per day. Such stipulated

24  payments shall be made by check payable to: Rose Foundation for Communities and

25  the Environment, and such funds shall be used for the sole purpose of funding

26  environmentally beneficial projects, as described in Paragraph 35. Payment shall be

27  sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA

28

82258-00002/5429647.6

1  94607. Defendant agrees to make the stipulated payment within fourteen (14) days

2  after the resolution of the event that precipitated the stipulated payment liability.

3          38.    <u>Interest on Late Payments</u>. Defendant shall pay interest on any

4  payments, fees, or costs owed pursuant to this Consent Decree that are not received

5  by the due date. The interest shall accrue starting the next business day after the

6  payment is due and shall be computed at a rate equal to the lower of: (i) 5% per year

7  (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest

8  shall continue to accrue daily on any outstanding balance until Defendant is current

9  on all payments then due under this Consent Decree, and shall be paid at the same

10 time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on

11 late payments shall be paid by check payable to: Rose Foundation for Communities

12 and the Environment, and such funds shall be used for the sole purpose of funding

13 environmentally beneficial projects, as described in Paragraph 35. Payment shall be

14 sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA

15 94607.

16 **IV.    DISPUTE RESOLUTION**

17         39.    <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the

18 dispute resolution procedures of this Section IV by notifying the other Party in

19 writing of the matter(s) in dispute and of the disputing Party's proposal for resolution.

20 The Parties shall then meet and confer in good faith (telephonically, by

21 videoconference, or in person) within ten (10) days of the date of the notice in an

22 attempt to fully resolve the dispute no later than thirty (30) days from the date of the

23 meet and confer.

24         40.    <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within

25 thirty (30) days from the date of the meet and confer described in Paragraph 39, the

26 Parties agree that the dispute may be submitted for formal resolution by filing a

27

28

82258-00002/5429647.6

motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

41.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

42.    <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

43.    <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

44.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

45.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

46.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

47.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

48.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

49.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

50.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written

agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

51.    Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

52.    Choice of Law. The laws of the United States shall govern this Consent Decree.

53.    Diligence. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

54.    Effect of Consent Decree. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

55.    Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

56.    Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. To the maximum extent feasible, any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

57.    Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their

1  successors and assigns. Either Party shall notify the other Party within thirty (30)

2  days of any assignment.

3      58.  <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default

4  in the performance of any of their respective obligations under this Consent Decree

5  when performance becomes impossible due to a Force Majeure event. A Force

6  Majeure event is any circumstance beyond a Settling Party's control, including

7  without limitation, any act of God, war, fire, earthquake, weather event making

8  performance impossible (e.g., flood, windstorm), pandemic, public health crisis, or

9  natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or

10  terrorism; restraint by court order or public authority or agency; or action or non-

11  action or delay by, or temporary or permanent inability or delays to obtain the

12  necessary authorizations or approvals from any governmental agency or permitting

13  entity. A Force Majeure event shall not include normal inclement weather for

14  Pomona, CA, economic hardship, inability to pay, or employee negligence. Any Party

15  seeking to rely upon this Paragraph to excuse or postpone performance shall have the

16  burden of establishing that it could not reasonably have been expected to avoid the

17  Force Majeure event and which by exercise of due diligence has been unable to

18  overcome the failure of performance. The Parties shall exercise due diligence to

19  resolve and remove any Force Majeure event.

20      59.  <u>Correspondence</u>. All notices required herein or any other correspondence

21  pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail

22  transmission to the email address listed below, or if electronic mail is not feasible,

23  then by certified U.S. mail with return receipt, or by hand delivery to the following

24  addresses:

25

26

27

28

CONSENT DECREE

82258-00002/5429647.6

| If to Plaintiff: | If to Defendant: |
|---|---|
| Los Angeles Waterkeeper | Michael Hilgert, Chief Executive Officer |
| Benjamin Harris | |
| Erina Kwon | Superior Duct Fabrication, Inc. |
| Madeleine Siegel | 1683 Mount Vernon Ave. |
| 360 E 2nd St., Suite 250 | Pomona, CA 91768 |
| Los Angeles, CA 90012 | Email: mhilgert@sdfab.com |
| Email: ben@lawaterkeeper.org | |
| Email: erina@lawaterkeeper.org | |
| Email: madeleine@lawaterkeeper.org | |
| Phone: (310) 394-6162 | |
| | |
| With copies to: | With copies to: |
| Michael R. Lozeau | Sherry Jackman |
| Rebecca L. Davis | Greenberg Glusker LLP |
| Lozeau Drury LLP | 2049 Century Park East, Suite 2600 |
| 1939 Harrison St., Suite 150 | Los Angeles, CA  90067 |
| Oakland, CA 94612 | Email: |
| Tel: (510) 836-4200 | SJackman@GreenbergGlusker.com |
| Email: michael@lozeaudrury.com | |
| Email: rebecca@lozeaudrury.com | |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

60.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as

82258-00002/5429647.6

1  inadmissible as a settlement communication under Federal Rule of Evidence 408 and

2  California Evidence Code section 1152.

3

4      The Parties hereto enter into this Consent Decree and submit it to the Court for

5  its approval and entry as a final judgment.

6      IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

7  as of the date first set forth below.

8

9  APPROVED AS TO CONTENT

10

11

12  Dated: May 1, 2025                    By: _____

13                                            Bruce Reznik
                                              Executive Director
14                                            Los Angeles Waterkeeper

15

16

17  Dated: _____, 2025           By: _____

18                                            Michael Hilgert
                                              Chief Executive Officer
19                                            Superior Duct Fabrication, Inc.

20

21  APPROVED AS TO FORM

22                                        LOZEAU DRURY LLP

23

24

25  Dated: May 1, 2025                    By: _____

26                                            Michael R. Lozeau
                                              Attorney for Plaintiff
27                                            Los Angeles Waterkeeper

28

                                       34

inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____, 2025          By: _____
                                                Bruce Reznik
                                                Executive Director
                                                Los Angeles Waterkeeper


Dated: ____May 2____, 2025          By: _____*Mike Hilgert*_____
                                                Michael Hilgert
                                                Chief Executive Officer
                                                Superior Duct Fabrication, Inc.

APPROVED AS TO FORM

                                                LOZEAU DRURY LLP


Dated: _____, 2025          By: _____
                                                Michael R. Lozeau
                                                Attorney for Plaintiff
                                                Los Angeles Waterkeeper

34
CONSENT DECREE

1

2

GREENBERG GLUSKER LLP

3

Dated: _____May 1_____, 2025          By: _____

4                                                    Sherry Jackman

5                                                    Attorney for Defendant
                                                     Superior Duct Fabrication, Inc.

6

7

8

9  **IT IS SO ORDERED.**

10 **FINAL JUDGMENT**

11

12     Upon approval and entry of this Consent Decree by the Court, this Consent

   Decree shall constitute a final judgment between the Plaintiff and Defendant.

13

14

15 Dated: _July 11, 2025_____          CENTRAL DISTRICT OF CALIFORNIA

16

17

18                                        _____

19                                        HONORABLE Otis D. Wright, II
                                          United States District Court Judge
20

21

22

23

24

25

26

27

28

82258-00002/5429647.6

# EXHIBIT
# A

Docusign Envelope ID: E824EF8E-82F3-4F99-952A-B8C2AD5C9D8B



**Legend**

| Symbol | Label | Symbol | Label |
|---|---|---|---|
| — (red) | Site Boundary | (pooling shape) | Pooling |
| (sump drain) | Sump Drain | → (blue) | Surface Water Flow |
| DA# | Drainage Area | ⇢ (green dashed) | Trench Drain |
| DP# | Drainage Point | → (orange) | Run-On |
| DP2 | Drainage Point 2 (Discharge for Comingled Roof and Industrial Water via Aboveground Pipe) | (car) | Employee Parking |
| | | ● (magenta) | Potable Water Spigot and Fire Riser |

TITLE: Superior Duct Fabrication SWPPP Site Map

FACILITY ADDRESS: 1683 Mt. Vernon Pomona, CA 91768

FIGURE #: 1 of 1

REVISION DATE: Apr. 25, 2025

**Yorke ENGINEERING, LLC**
www.YorkeEngr.com

CONSENT DECREE